T.C. Memo. 2012-20

UNITED STATES TAX COURT

IVAN RIVAS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5448-08L.                  Filed January 18, 2012.

Ivan Rivas, pro se.

<u>Frederick C. Mutter</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  Pursuant to section 6330(d),[1] petitioner
seeks review of respondent's determination to proceed by levy
with the collection of petitioner's unpaid 1999-2003 Federal
income tax liabilities.  The issues for decision are:  (1)

---

[1]All section references are to the Internal Revenue Code, as
amended.

Whether petitioner is precluded from contesting his underlying tax liabilities for 1999-2003; (2) whether respondent improperly denied petitioner a face-to-face hearing under section 6330; and (3) whether respondent abused his discretion in upholding the proposed levy action.

                          FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulation of facts is incorporated herein by this reference.  Petitioner resided in New York when he petitioned this Court.

Petitioner failed to file Federal income tax returns for 1999-2003.  Respondent prepared substitutes for returns for petitioner under section 6020(b), and on August 19, 2005, respondent mailed to petitioner by certified mail five notices of deficiency, one for each of the years 1999-2003.  Each notice was addressed to petitioner at P.O. Box 76, Hurleyville, New York, 12747, his last known address.  Petitioner did not claim the certified mail, and the U.S. Postal Service (USPS) returned the notices of deficiency to respondent as unclaimed.  Petitioner did not petition this Court with respect to the notices of deficiency.

Following the expiration of the period for petitioning this Court set forth in the notices of deficiency, respondent timely assessed the income tax deficiencies and additions to tax plus statutory interest (collectively the 1999-2003 tax liabilities).

On March 14, 2007, respondent issued a notice pursuant to section 6330(a) with respect to the 1999-2003 tax liabilities informing petitioner of respondent's intent to levy and of his right to a hearing (section 6330 hearing). In response, petitioner timely submitted a Form 12153, Request for a Collection Due Process or Equivalent Hearing. Petitioner indicated that he disagreed with the proposed levy and requested an audiotaped face-to-face section 6330 hearing. Petitioner stated in pertinent part:

> A couple of the issues we will address are whether or not the IRS followed proper procedure and to ensure that this "liability" is authentic or even owed. If this is indeed a proper assessment, I would like to discuss what collection alternatives are available to me such as, but not limited to, and any other payment options that may be available to me. If the IRS has considered any of prior issues that I've raised in the past to be frivolous, I hereby renounce them.

By letter dated October 23, 2007, respondent's Appeals Office acknowledged receipt of petitioner's Form 12153 and assigned petitioner's case to Settlement Officer Edward Repko (Officer Repko). Respondent's Appeals Office informed petitioner that it would not provide a face-to-face section 6330 hearing if he raised only frivolous arguments.[2] The letter also informed

---

[2]Petitioner's position as expressed in Form 12153 is very similar in phrasing and tone to the positions of other taxpayers whose cases we have decided. In those cases, both the Appeals Office and this Court characterized the taxpayers' positions as frivolous, groundless, and/or asserted for purposes of delay. See, e.g., Reynolds v. Commissioner, T.C. Memo. 2009-181; Cyman

(continued...)

petitioner that he raised only frivolous arguments in his hearing request but that the Appeals Office would grant him a face-to-face hearing if he submitted a letter to Officer Repko raising legitimate issues.

In response, on November 7, 2007, petitioner mailed a letter to Officer Repko that disagreed with the determination that he had raised only frivolous arguments and that also requested a face-to-face section 6330 hearing at the closest Appeals Office to his residence.  In the letter, petitioner requested documentation supporting respondent's assessment, specifically "a copy of the original documents that were used to enter those numbers into your computer, not the printout that you would get from your own computer."  Petitioner contended that he had earned no taxable income during the relevant years and wrote:

> If I do not feel that I had any taxable income for those years, why would the IRS want me to file?  I have also been informed that if I file showing that I had zero income; I would be penalized $500.00.  Isn't that Double Jeopardy?

Petitioner also requested that Officer Repko verify that respondent complied with applicable law and procedure.

Respondent transferred petitioner's case to the Albany Appeals Office, where it was assigned to Settlement Officer Thomas A. Conley (Officer Conley).  By letter dated December 6,

---

[2](...continued)
v. Commissioner, T.C. Memo. 2009-144.

2007, Officer Conley advised petitioner that he did not qualify for a face-to-face section 6330 hearing because he had raised only frivolous arguments. In the letter Officer Conley scheduled a telephone conference call for January 9, 2008, and requested that petitioner submit the following: (1) A completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals; and (2) Forms 1040, U.S. Individual Income Tax Return, for 2005 and 2006. By letter dated January 5, 2008, petitioner continued to assert similar arguments, declined to participate in the January 9 telephone hearing, and reiterated his request for a face-to-face hearing.

By letter dated January 10, 2008, Officer Conley rescheduled the telephone hearing for January 24, 2008,[3] and again requested that petitioner submit a completed Form 433-A and Forms 1040 for 2005 and 2006. In the letter Officer Conley informed petitioner that the January 24 telephone conference was his final opportunity to discuss why he disagreed with the levy or to discuss collection alternatives. By letter dated January 22, 2008, petitioner again declined to participate in a telephone hearing and reiterated his request for a face-to-face hearing. Petitioner did not submit a completed Form 433-A or the 2005 and 2006 Forms 1040.

---

[3]The letter rescheduling the telephone hearing contained a typographical error in that it showed the rescheduled date for the hearing as Jan. 24, 2007.

On January 31, 2008, respondent issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 sustaining the proposed levy action.  In the notice of determination, the Appeals Office determined the following: (1) All legal and administrative requirements had been met, (2) petitioner failed to raise any nonfrivolous issue or offer a reasonable collection alternative, and (3) the levy properly balanced the need for efficient collection of taxes with a taxpayer's concerns regarding the intrusiveness of the proposed levy action.  The Appeals Office refused to consider petitioner's underlying tax liabilities, stating:  "Statutory notices of deficiency were issued to you when the liability was proposed by the Examination division.  You do not have another opportunity to challenge the liability in the CDP forum."  Petitioner timely filed a petition contesting respondent's notice of determination.

OPINION

I.   <u>Determination To Proceed With Collection</u>

Section 6330(a) provides that no levy may be made on any property or right to property of any person unless the Secretary[4] has notified such person in writing of their right to a hearing

---

[4]The term "Secretary" means "the Secretary of the Treasury or his delegate", sec. 7701(a)(11)(B), and the term "or his delegate" means "any officer, employee, or agency of the Treasury Department duly authorized by the Secretary of the Treasury directly, or indirectly by one or more redelegations of authority, to perform the function mentioned or described in the context", sec. 7701(a)(12)(A)(i).

before the levy is made. If a taxpayer requests a hearing, a hearing shall be held before an impartial officer or employee of the Internal Revenue Service Office of Appeals. Sec. 6330(b)(1), (3). At the hearing, the taxpayer may raise any relevant issue, including appropriate spousal defenses, challenges to the appropriateness of the collection action, and collection alternatives. Sec. 6330(c)(2)(A). A taxpayer is precluded from contesting the existence or amount of the underlying tax liability unless the taxpayer did not receive a notice of deficiency for the liability in question or did not otherwise have an earlier opportunity to dispute the liability. Sec. 6330(c)(2)(B); see also Sego v. Commissioner, 114 T.C. 604, 609 (2000). The phrase "underlying tax liability" includes the tax deficiency, additions to tax, and statutory interest. Katz v. Commissioner, 115 T.C. 329, 339 (2000).

Following a hearing, the Appeals Office must determine whether the proposed levy action may proceed. In so doing, the Appeals Office must take into consideration: (1) Verification presented by the Secretary that the requirements of applicable law and administrative procedure have been met, (2) relevant issues raised by the taxpayer, and (3) whether the proposed levy appropriately balances the need for efficient collection of taxes with a taxpayer's concerns regarding the intrusiveness of the proposed levy action. Sec. 6330(c)(3).

Section 6330(d)(1) grants this Court jurisdiction to review the Appeals Office's determination made pursuant to the section 6330 hearing.  Where the underlying liability is properly at issue, we review that determination de novo.  <u>Sego v. Commissioner</u>, <u>supra</u> at 610.  We review any other administrative determination regarding the proposed levy for abuse of discretion.  <u>Id.</u>  An abuse of discretion occurs if the Appeals Office exercises its discretion "arbitrarily, capriciously, or without sound basis in fact or law."  <u>Woodral v. Commissioner</u>, 112 T.C. 19, 23 (1999).

## II.  <u>Notices of Deficiency</u>

Section 6330(c)(2)(B) precludes a taxpayer from challenging the existence or amount of the underlying liability unless the taxpayer did not receive a notice of deficiency for that liability or did not otherwise have an earlier opportunity to dispute the liability.  Petitioner contends that respondent has not introduced sufficient evidence that (1) respondent properly mailed the notices of deficiency for 1999-2003 and (2) petitioner actually received the notices.  Therefore, petitioner contends that respondent improperly denied him a face-to-face section 6330 hearing on his underlying tax liabilities.[5]  Respondent contends

---

[5]Petitioner also contends that this Court cannot consider respondent's evidence regarding proper mailing because we are limited to a review of the administrative record.  We disagree. Even in a circuit where the Court of Appeals has held that
(continued...)

that he properly mailed notices of deficiency to petitioner at his last known address and that he is deemed to have received the notices; therefore, he was precluded from challenging his underlying liabilities during the section 6330 hearing.

The Commissioner is expressly authorized to send a notice of deficiency by certified or registered mail to the taxpayer's last known address.  Sec. 6212.  Although section 6330(c)(2)(B) contemplates actual receipt of a notice of deficiency by the taxpayer, see, e.g., Tatum v. Commissioner, T.C. Memo. 2003-115, the taxpayer may not avoid actual receipt by deliberately refusing delivery, Sego v. Commissioner, supra at 610-611.  A taxpayer who refuses delivery of a notice of deficiency is deemed to have received the notice.  Id. at 611; see also Cyman v. Commissioner, T.C. Memo. 2009-144.

If the taxpayer contests receipt of the notice of deficiency, the Commissioner must introduce evidence of actual mailing.  See Smith v. Commissioner, T.C. Memo. 2008-229.  The

---

[5](...continued)
administrative review of an IRS determination under sec. 6330 is subject to the Administrative Procedure Act and that we must focus on the administrative record, that record may be supplemented if the record does not adequately disclose the basis for the IRS' determination.  See Robinette v. Commissioner, 439 F.3d 455, 461-462 (8th Cir. 2006), revg. 123 T.C. 85 (2004).  In this case, respondent offered evidence of timely mailing and attempted delivery to refute petitioner's argument that he did not receive valid notices of determination and to explain the basis of the IRS' determination that petitioner could not challenge the underlying tax liabilities.

U.S. Court of Appeals for the Second Circuit, to which an appeal in this case would lie absent a stipulation to the contrary, see sec. 7482(b)(1)(A), has held that the Commissioner is entitled to a presumption of actual mailing if the Commissioner introduces evidence that the notice of deficiency existed and produces "a properly completed Postal Form 3877 * * * (or [its] equivalent)", O'Rourke v. United States, 587 F.3d 537, 540 (2d Cir. 2009). In O'Rourke the Commissioner introduced a torn, partial copy of Form 3877 as evidence of mailing. The Court of Appeals for the Second Circuit noted that the mail log "'(a) bears the signature of the individual who issued the Deficiency Notice; (b) sets forth the same certified mail number as is imprinted on the Deficiency Notice; (c) sets forth the correct address of the Debtors'" and was stamped by USPS on the alleged date of mailing. Id. (quoting In re O'Rourke, 346 Bankr. 643, 646 (Bankr. W.D.N.Y. 2006)).[6] If

---

[6]The opinion of the Court of Appeals for the Second Circuit in O'Rourke v. United States, 587 F.3d 537 (2d Cir. 2009), is consistent with opinions of other courts finding that the Commissioner is not required to produce a USPS Form 3877 if the Commissioner introduces equivalent evidence of proper mailing. See, e.g., Mason v. Commissioner, 132 T.C. 301, 318 n.10 (2009) ("While respondent did not present a U.S. Postal Service Form 3877, there is sufficient evidence in the record that respondent sent a Letter 1153 by certified mail to petitioner's last known address."); Walthers v. Commissioner, T.C. Memo. 2009-139 (holding that the Commissioner is not required to produce a Form 3877, but the Commissioner must introduce evidence that "he mailed the notice to petitioner's last known address by certified mail."); Welch v. United States, 98 Fed. Cl. 655 (2011) (stating that if the IRS is unable to produce a Form 3877, "it can raise the same presumption by establishing that it followed a set
(continued...)

the Commissioner introduces sufficient evidence of mailing, the taxpayer bears the burden of going forward.  Id.

The record contains copies of five notices of deficiency, each dated August 19, 2005, for 1999-2003.  Each notice of deficiency bears petitioner's name and post office box address.[7] Each notice of deficiency bears a certified mail tracking number. The record also contains copies of the envelopes in which respondent separately mailed the notices of deficiency.  Each envelope bears a postmark indicating that the envelope was mailed via certified mail on August 19, 2005, and a sticker indicating that USPS returned the envelopes to the sender as "unclaimed" mail.

At trial LaTrayer Sumter-Moreau (Ms. Sumter-Moreau), a delivery retail analyst for USPS, testified about procedures employed when a USPS office receives a piece of certified mail addressed to a post office box.  When USPS accepts a piece of certified mail from the sender, a postal service employee labels the envelope with a certified mail tracking number and the date of receipt.  When the envelope reaches the recipient's post

_____

[6](...continued)
procedure with respect to the taxpayers and providing corroborating documentation.").

[7]Petitioner does not dispute that the post office box address was his last known address.  Furthermore, petitioner used the same address on his correspondence with the Appeals Office, on the petition he filed with this Court, and in his sworn testimony at trial.

office, a postal service employee completes a USPS Form 3849, Delivery Notice/Reminder/Receipt, and places the form in the recipient's post office box. The USPS Form 3849 notifies the recipient that he needs to claim a piece of certified mail. If the recipient does not claim the item within 5 days, a postal service employee completes another USPS Form 3849 and places the form in the recipient's post office box. If the recipient fails to claim the item after another 10 days have passed, a postal service employee will stamp the envelope "Returned to sender" and return the item to the sender. If the intended recipient's post office box is full, a postal service employee will remove all of the recipient's mail, including the USPS Form 3849, and place a notice in the post office box informing the recipient that he has overflow mail.

Ms. Sumter-Moreau also identified and explained the various postal stamps and marks on the envelopes in the record. After examining the photocopied envelopes, Ms. Sumter-Moreau testified that the envelopes bore a return address for the Internal Revenue Service office in Philadelphia, Pennsylvania. She testified that the postmark on the envelope bore the date the item came through the USPS processing and distribution facility, August 19, 2005, and that the postmark indicated that the item was sent from Philadelphia, Pennsylvania. She identified the certified mail tracking labels on the envelopes and the "Returned to sender"

stamp. Finally, Ms. Sumter-Moreau identified a stamp on the envelope indicating the first date USPS notified the recipient about the certified mail item, the date of the second notice, and the date USPS returned the item to the sender.

Respondent introduced evidence that the notices of deficiency existed and evidence of actual mailing equivalent to a USPS Form 3877. The record contains no credible evidence to rebut the presumption of actual mailing arising therefrom. Petitioner did not testify as to whether he received or recalled receiving the notices of deficiency, but merely asserted that respondent failed to introduce proof of proper mailing and receipt. Petitioner advanced no argument and presented no credible evidence challenging the presumption of actual mailing and delivery. Petitioner also did not explain why he failed to pick up the notices of deficiency after appropriate notification of the delivery of the notices was placed in his post office box.

We find on this record that petitioner failed to accept and/or refused delivery of the notices of deficiency for the years at issue and therefore is deemed to have received them. Accordingly, respondent's Appeals Office correctly determined that petitioner was precluded from challenging the underlying tax liabilities at the section 6330 hearing. See Sego v. Commissioner, 114 T.C. at 611; Clark v. Commissioner, T.C. Memo. 2008-155.

III. Demand for Face-to-Face Section 6330 Hearing

Petitioner also contends that respondent improperly denied him a face-to-face section 6330 hearing. We have held repeatedly that because a section 6330 hearing is an informal proceeding rather than a formal adjudication, a face-to-face hearing is not mandatory. See Katz v. Commissioner, 115 T.C. at 337; Davis v. Commissioner, 115 T.C. 35, 41 (2000); Bean v. Commissioner, T.C. Memo. 2006-88. Accordingly, a proper section 6330 hearing may take the form of a face-to-face meeting, a telephone conference, or one or more written communications between the taxpayer and the Appeals Office. Katz v. Commissioner, supra at 337-338; sec. 301.6330-1(d)(2), Q&A-D6, Proced. & Admin. Regs. Once a taxpayer is given a reasonable opportunity for a hearing and fails to avail himself of that opportunity, this Court may sustain the Commissioner's determination to proceed with collection on the basis of an Appeals officer's review of the case file. See, e.g., Bean v. Commissioner, supra; Ho v. Commissioner, T.C. Memo. 2006-41; Leineweber v. Commissioner, T.C. Memo. 2004-17.

The applicable regulations provide that the Appeals Office will not grant a request for a face-to-face section 6330 hearing concerning a taxpayer's underlying liability if "the taxpayer wishes only to raise irrelevant or frivolous issues" concerning the liability. Sec. 301.6330-1(d)(2), Q&A-D8, Proced. & Admin. Regs. If the taxpayer requests a face-to-face hearing concerning

a collection alternative, the Appeals Office will not grant the request "unless other taxpayers would be eligible for the alternative in similar circumstances." Id. To be eligible for a collection alternative, the taxpayer must provide required returns or make required deposits of tax. Id.

Petitioner requested a face-to-face section 6330 hearing allegedly to address the underlying liabilities as well as any available collection alternatives. The Appeals Office properly denied petitioner's request. The Appeals Office advised petitioner on several occasions that it would grant his request for a face-to-face hearing if he identified relevant issues he wanted to discuss. Instead of identifying relevant issues, petitioner repeatedly responded with the same vague contentions similar to those we have rejected in the past as frivolous and groundless or offered for purposes of delay. See, e.g., Reynolds v. Commissioner, T.C. Memo. 2009-181; Cyman v. Commissioner, T.C. Memo. 2009-144. Furthermore, petitioner was not entitled to a face-to-face hearing on the underlying liabilities because he is deemed to have received the relevant notices of deficiency.

Petitioner also asserted that he wanted to discuss collection alternatives. However, he failed to provide any financial information to the Appeals Office, including the requested Forms 1040 and Forms 433-A, which were necessary to evaluate petitioner's ability to pay the liabilities and he did

not propose any collection alternative.  We conclude on these facts that petitioner was not entitled to a face-to-face hearing on the availability of collection alternatives.  See, e.g., Williams v. Commissioner, T.C. Memo. 2008-173.

The Appeals Office offered petitioner the right to conduct his section 6330 hearing by telephone or through written correspondence.  Petitioner refused to participate in the two scheduled telephone conferences.  Petitioner was given an opportunity for a section 6330 hearing and failed to take advantage of it.  The Appeals Office did not abuse its discretion in denying petitioner a face-to-face hearing under these circumstances.

IV.  Review of the Notice of Determination

Because the validity of the underlying liabilities is not properly at issue, we review the notice of determination for abuse of discretion.  See Sego v. Commissioner, supra at 610; Goza v. Commissioner, 114 T.C. 176, 182 (2000).  Ordinarily, we consider only those matters raised during the section 6330 hearing or considered in the notice of determination.  Magana v. Commissioner, 118 T.C. 488, 493-494 (2002).  The Appeals Office abuses its discretion if it acts "arbitrarily, capriciously, or without sound basis in fact."  Mailman v. Commissioner, 91 T.C. 1079, 1084 (1988).

Petitioner has not advanced any argument or introduced any evidence that would allow us to conclude that the determination to sustain the levy was arbitrary, capricious, or without sound basis in fact. Petitioner did not submit a Form 433-A or any other financial information during the section 6330 hearing, nor did he offer a reasonable collection alternative. The Appeals Office determined that the requirements of applicable law and administrative procedure were met and concluded that the proposed levy appropriately balanced the need for efficient collection of taxes with petitioner's concerns regarding the intrusiveness of the levy action. Accordingly, we hold that the Appeals Office did not abuse its discretion in upholding the proposed levy action.

We have considered the parties' remaining arguments, and to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.